*66 OPINION.
Littleton:
Little need be said in discussing the matter of compensation paid by petitioner to its president for 1918 and 1919. Templeton testified in detail concerning the business of the corporation and the duties performed by him during the taxable years. As was said by the Board in the Appeal of Woodcliff Silk Mills, 1 B. T. A. 715—
The amount of compensation which a corporation shall pay its officers for their personal service is, in the first instance, a matter within the judgment and discretion of its hoard of directors, and the only limitation upon the deduction of such amount for income tax purposes is that the amount must be reasonable.
Measured by the results accomplished, both from the standpoint of volume of business transacted and profits arising to the corporation therefrom and the nature of the services rendered by the president, the Board is of the opinion that the amounts paid to Temple-ton as compensation were not unreasonable or excessive and should be allowed as a deduction.
*67 We think the Commissioner erred in determining that petitioner’s 1918 closing inventory was $90,265.28. Jack parts amounting to $38,973.39 became obsolete, their use was abandoned, and they were discarded in November or December, 1918. The president of the corporation, who was in complete charge of every activity, gave directions and instructions in November or December, 1918, that certain models of jacks hereinbefore mentioned were to be no longer manufactured or offered for sale, that only the new and improved jacks should thereafter be manufactured and offered for sale, and these instructions were carried out. He also abandoned the use of and discarded all parts for the manufacture of jacks for war purposes. The obsolete and discarded parts were not physically thrown out of the plant into the junk pile until the taking of the inventory had been completed, which was early in 1919. This was probably due to the fact that, upon cessation of war in November, 1918, the nature of the company’s output changed completely and every effort was being made by everyone to secure and fill commercial orders for new jacks to the end that the company should not suffer by reason of the cancellation of its war contracts. But we think from the evidence in this proceeding that the matter of actually casting the obsolete and discarded parts into the scrap heap should have no bearing upon the value of the closing inventory. The throwing out of such material is merely evidentiary of its obsoleteness and abandonment. Without that act having been performed we are satisfied that the jack parts manufactured were obsolete and that the petitioner abandoned their use and discarded them in the year 1918. They were, therefore, properly excluded from the closing inventory. The listing and valuation thereof at the time of taking the closing inventory was merely for the purpose of accurately arriving at the correct inventory and for the purpose of having a correct account of the junkecl material to be entered upon the books. The item of tools was carried in the asset account at a fixed amount of $8,500 and the item of $2,000 for tools should not therefore be included in the inventory.
The 50 per cent fraud penalty for each of the years appears to have been imposed by the Commissioner because of his conclusion that petitioner willfully understated its closing inventory of 1918 and that it unjustifiably claimed certain improper deductions in both 1918 and 1919. In view of the evidence before the Board, we are of the opinion that the Commissioner was in error in this regard and that the returns were not willfully false and fraudulent with intent to evade the tax.
We have approved the petitioner’s determination of its closing-inventory and have found that the salaries paid to its president *68 were not unreasonable. The other matters, which have been disposed' of by stipulation, relating to the deduction for amortization of war facilities, depreciation, expenses, and worthless debts, appear unimportant from the standpoint of fraud. They were not seriously urged before the Board in support of the imposition of the penalty in either year. In view of the evidence, the Board is of the opinion that no penalty should be imposed for either the year 1918 or 1919.

Judgment will be entered on 15 days’ notice, under Rule 50.